UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOHN CASEY, et al.,

                Plaintiffs,

   - against -

RYDER TRUCK RENTAL, INC., et al.,

                Defendants.
-------------------------------------------------------X

**MEMORANDUM
AND
O  R  D  E  R**

00 CV 2856 (CLP)

On May 19, 2000, John Casey, as Administrator of the Estate of Grace Casey,

commenced this action against Ryder Truck Rental, Inc. ("Ryder"), Atkinson Freight Lines

("Atkinson"), and Michael J. Patterson ("Patterson"), seeking damages for the wrongful death of

Grace Casey as a result of a traffic accident that occurred on January 24, 2000. On February 21,

2002, Ryder filed a cross-claim against Atkinson and Patterson, seeking indemnification under a

contractual provision in the truck leasing agreement between Ryder and Atkinson, and also under

principles of common law indemnification. On that same date, a settlement of the underlying

claim was reached with plaintiffs. Ryder now moves for summary judgment on its cross-claims

against Atkinson and Patterson.

## FACTUAL BACKGROUND

On January 24, 2000, Grace Casey, a pedestrian, was struck in the intersection of Bay

Street and Virginia Avenue in Richmond County by a truck driven by defendant Patterson, an

employee of Atkinson. (Joint Pre-Trial Order at 2).[1] The truck was a 1996 Kensworth tractor-trailer, bearing Pennsylvania State registration AD12735. (Id.) The truck was owned by Ryder and leased to Atkinson pursuant to a Truck Lease and Service Agreement (the "Truck Lease Agreement"), which is the subject of this motion. (Id.) In the Pre-Trial Order, the parties agreed that immediately prior to the accident, the truck was parked in a "No Standing Zone," while the driver Patterson was looking at a road map to check for directions. (Id.) It is not disputed that the decedent, Ms. Casey, was struck by the front of the tractor-trailer as she was crossing the street. (Id. at 2-3). After striking the decedent, the truck, driven by Patterson, proceeded 50 feet through the intersection of Bay Street and Virginia Avenue before it stopped. (Id. at 4).

Defendants admitted that Patterson was not even aware that he had hit the decedent until he was confronted by the facial expressions of a passerby that "led him to believe that something was wrong." (Id. at 3-4). In the Pre-Trial Order, however, defendants contended that the decedent "was outside of the designated crosswalk," in the driver's "'blind spot' created by the nose of the Tractor and thus was invisible to Patterson." (Id. at 3). Plaintiffs contended, alternatively, that the decedent was properly in the crosswalk during the time of the accident. (Id. at 2). During discovery, it was learned that a drug test, taken the day after the accident, indicated that Patterson may have been using marijuana at the time of the accident. (Id. at 7-11).

Immediately following the accident, at or about 12:00 p.m., Ms. Casey was taken to Bellevue Medical Center by ambulance where she was treated for severe permanent injuries

---

[1] Citations to "Joint Pre-Trial Order" refer to the parties' Summary of Claims Which Remain to Be Tried, contained in the Joint Pre-Trial Order, dated Aug. 14, 2001, submitted by the parties prior to the scheduled trial date, and attached as Ex. A to the Reply Affirmation of John P. Connors, Jr., dated Apr. 15, 2002 ("Connors Reply Aff.").

resulting from contact with the truck. (Id. at 2). In the Pre-Trial Order, plaintiffs claimed that

Ms. Casey suffered:

> blunt trauma of torso and extremities with skeletal and
> visceral injuries; cardiac arrest; left multiple rib fractures;
> left pneumothorax; bilateral lower extremity crush injuries
> with multiple fractures; left lower extremity fracture; near
> total above knee amputation; left mid-lower tibula-fibula
> fracture; left comminuted fracture of the shaft of the femur;
> right lower extremity fracture and open injury; right tibula-
> fibula fracture with partial amputation; open right ankle
> fracture; deep laceration, right ankle and right leg; right
> humerus fracture; positive gross DPL; left acetabular fracture;
> open unstable pelvic fracture; left hip dislocation; right frontal
> depressed fracture; degloving of skin, subcutaneous tissue, and
> soft tissue of left thigh; degloving of both lower legs with open
> fractures of both lower legs and subsequent amputation
> (at surgery) of the left leg above the knee; separation of the
> pelvic bones, fractures, and large hematoma; pelvic and facial
> hematoma; facial contusions/abrasions; bruise to the forehead;
> hemorrhagic shock.

(Id. at 6). When the decedent arrived at the hospital, she underwent "an emergency laparotomy,

an above-knee amputation of the left knee, placement of a pelvic C-clamp stabilization [device]

and placement of a right chest tube." (Id. at 4). At 4:20 p.m., Ms. Casey was pronounced dead

in the recovery room. (Id.)

In the Pre-Trial Order, plaintiffs sought damages from Atkinson and its employee,

Patterson, based on negligence and alleged violations of various provisions of the New York

Vehicle and Traffic Law ("VTL"), as well as violations of certain New York City Rules and

Regulations. (Id. at 3). Plaintiffs also asserted a claim against Ryder under VTL § 388, which

holds an owner of a vehicle liable for the negligence of the driver. (Id. at 2). All three

defendants, in a jointly filed response, denied that Patterson was negligent and asserted claims of

contributory negligence on the part of Ms. Casey. (Id.)

At the time of the accident, Atkinson's primary insurance coverage was with Reliance Insurance Company. (Connors Aff. ¶ 8).[2] Ryder was listed as a named insured under the Reliance policy pursuant to the terms of the Truck Lease Agreement. (Connors Ltr. dated Feb. 5, 2002 at 1; see also Kelly Aff.[3] ¶ 13). Pursuant to its obligations under the insurance contract, Reliance retained the law firm of Mintzer, Sarowitz, Zeris, Ledva & Meyers to represent all three defendants. Thereafter, in October 2001, the Commonwealth Court of Pennsylvania entered a Liquidation Order as to Reliance and imposed a $300,000.00 cap on all cases involving Reliance, including this action, to be paid by the Pennsylvania Property and Casualty Insurance Guaranty Association (the "PPCIGA") out of a fund created under the Pennsylvania Guaranty Act (the "PGA"). (Id. ¶ 9-10).

Following the completion of discovery, the parties consented to trial before the undersigned which was scheduled to begin on February 25, 2002. In a telephone conference with this Court on January 17, 2002, attended by plaintiffs' attorney, defendants' attorney, and Robert Giannone, a claims consultant from the PPCIGA, it was determined that the PPCIGA was contemplating "a formal written tender of the statutory limit of $300,000.00 on behalf of the Reliance insureds," after which time the PPCIGA would cease to continue to defend the case and

---

[2] Citations to "Connors Aff." refer to the Affidavit of John P. Connors, Jr., dated Mar. 22, 2002.

[3] Citations to "Kelly Aff." refer to the Affidavit of Kevin L. Kelly, Esq., dated Apr. 4, 2002.

cease to pay defense costs associated with this case. (Kelly Ltr.[4] at 2). During that conference, plaintiffs' attorney made it clear that plaintiffs would not settle for $300,000.00 and reiterated plaintiffs' demand for $3,000,000.00. (Id.)

Counsel for the defendants thereafter wrote a letter to the three defendants where he outlined their options with regards to settlement, trial, and their continued representation in light of the fact that the PPCIGA would cease to defend the three defendants, and would tender $300,000.00 for what it considered to be a covered claim. (Id.) In that letter, counsel for the defendants raised the issue of the indemnity provision in the Truck Lease Agreement and the impact that provision might have on the potential outcome of the case. (Id. at 3).

On February 18, 2002, counsel for Ryder and for Atkinson met with certain officers of Atkinson to discuss the strengths and weaknesses of the defendants' case. (Kelly Aff. ¶ 15). Among other things, they reviewed pertinent jury verdict awards in similar cases where the awards ranged from $20,000.00 to $4,000,000.00. (Id. ¶ 15(5)). Atkinson claims that based on this analysis, with several verdicts ranging between $250,000.00 and $300,000.00, Atkinson rejected any invitation to participate in a settlement fund for more than the $300,000.00 to be contributed by the PPCIGA fund. (Id. ¶ 15(5) - (7)). Thus, Atkinson argues that, as a consequence of the $300,000.00 cap, any settlement or verdict in excess of that amount would be recoverable from Ryder as the owner of the truck.

In early February 2002, Ryder retained separate counsel to represent Ryder's interests with regards to the contractual dispute now before this Court. Following the meeting on

---

[4] Citations to "Kelly Ltr." refer to the letter from defendants' counsel, Kevin L. Kelly, Esq., to defendants Ryder, Atkinson, and Patterson, dated Jan. 22, 2002.

February 21, 2002, Ryder filed a cross-claim for indemnification against Atkinson and Patterson based on the indemnification provision in the Truck Lease Agreement and on principles of common law indemnification. Thereafter, on that same day, four days before trial was scheduled to commence, plaintiffs agreed to settle their claims for $1,000,000.00, with $300,000.00 coming from the PPCIGA fund as agreed upon by Atkinson, and with Ryder paying the balance of $700,000.00.

Based on a provision in the Truck Lease Agreement entered into between Ryder and Atkinson, Ryder now seeks summary judgment on its cross-claims for contractual indemnification and/or common law indemnification.


## DISCUSSION

A. Summary Judgment Standard

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. College at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied. See Auletta v. Tully, 576 F. Supp. 191, 194-95 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party

opposing the motion.'" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Phillips v. Kidder, Peabody & Co.</u>, 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256. A party opposing summary judgment may not "merely. . .assert a conclusion without supplying supporting arguments or facts." <u>BellSouth Telecomms., Inc. v. W.R. Grace & Co.</u>, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The party must set forth "concrete particulars" showing that a trial is necessary. <u>Nat'l Union Fire Ins. Co. v. Deloach</u>, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989). Indeed, "the mere existence of <u>some</u> alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 247-48 (emphasis in original).

In reversing a grant of summary judgment, the Second Circuit noted that the "'[t]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.'" <u>Quaratino v. Tiffany & Co.</u>, 71 F.3d 58, 65 (2d Cir. 1995) (quoting <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).

B. Conflict of Laws

   In response to defendant Ryder's motion for summary judgment, defendants Atkinson and Patterson raise for the first time the argument that Pennsylvania law should be applied in deciding the issues of contractual and common law indemnification. Ryder contends, however, that New York law should govern and that the parties had conceded in the Pre-Trial Order that New York law applied.

   Jurisdiction in this case is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, and it is well established that the choice of law rules of the forum state determine which state's substantive law governs the claims in the action. See Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001); Machleder v. Diaz, 801 F.2d 46, 51 (2d Cir. 1986) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)), cert. denied, 479 U.S. 1088 (1987); see also Lucas v. Lalime, 998 F. Supp. 263, 267 (W.D.N.Y. 1998). New York, the forum state in this case, requires an actual conflict of laws before applying a choice of law analysis. See Fieger v. Pitney Bowes Credit Corp., 251 F.3d at 393. In the event that no conflict exists, and "if New York law is among the relevant choices, New York courts are free to apply [New York law]." I.B.M. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) (citations omitted). Thus, the first question to be addressed is whether there is an actual conflict of laws. See Curley v. AMR Corp., 153 F.3d 5, 11 (2d Cir. 1988). "It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis." Id.; see also Fieger v. Pitney Bowes Credit Corp., 251 F.3d at 393.

   As an initial matter, Ryder argues that since the case was four days short of trial when the settlement was reached, and Atkinson never raised the issue of Pennsylvania law, Atkinson

8

should not be allowed to raise it now. Ryder is correct that the parties had agreed prior to trial that New York law governed the tort claims raised by plaintiffs. However, since Ryder did not actually file its cross-claims until February 21, 2002, the issue of which law would apply to the contractual and common law indemnification claims had not been raised nor is it clear that any of the parties considered the issue prior to the settlement. Thus, this Court finds that Atkinson may now raise the issue of choice of law in response to Ryder's cross-claims.

In the alternative, defendant Ryder argues that there is a conflict between the laws of New York and Pennsylvania that govern both contractual indemnification and common law indemnification, in that New York law does not require a showing of actual liability. Ryder further argues that under New York's choice of law rules, New York law would apply for all claims arising from the instant case.

Defendants Atkinson and Patterson argue that there is no conflict between the laws of New York and Pennsylvania regarding either contractual indemnification or common law indemnification when a case is settled before judgment. They argue that regardless of whichever state's law is applied, defendant Ryder has the burden of proving that: (1) Ryder would have been held liable had the case gone to judgment and therefore the payment was not voluntary; (2) that defendants Atkinson and Patterson were in fact negligent and liable for plaintiff Casey's injuries; and (3) that the settlement was reasonable. In the alternative, Atkinson and Patterson contend that even if there is a conflict between New York and Pennsylvania law, Pennsylvania law should apply under New York's choice of law rules for both the contractual indemnification claim and the common law indemnification claim.

1. Differences Between New York and Pennsylvania Law

In order to determine whether there is an actual conflict, the Court must first examine the elements of proof required for the contractual and the common law indemnification claims under both New York and Pennsylvania law.

a) Principles of Indemnification

Indemnity is a principle under which one party attempts to shift the entire burden of a judgment to another party based on the other party's actual responsibility for causing the harm. See Tokio Marine & Fire Ins. Co. Ltd. v. McDonnell Douglas Corp., 465 F. Supp. 790, 794 (S.D.N.Y. 1978). Under both Pennsylvania and New York law,

> [i]ndemnity can be awarded if the party seeking it was liable to the plaintiff only because of a non-delegable legal obligation, for example, and not because of any truly negligent action or omission. The question of indemnity involves an essentially equitable inquiry of which party, in good conscience, should ultimately be held responsible for the injury.

Id.; see also Glaser v. M. Fortunoff of Westbury Corp., 71 N.Y.2d 643, 646, 524 N.E.2d 413, 415, 529 N.Y.S.2d 59, 61 (1988) (holding that "'where one is held liable solely on account of the negligence of another, indemnification, not contribution, principles apply to shift the entire liability to the one who was negligent'") (quoting D'Ambrosio v. City of New York, 55 N.Y.2d 454, 462, 435 N.E.2d 366, 450 N.Y.S.2d 149 (1982)); Sirianni v. Nugent Bros., Inc., 509 Pa. 564, 571, 506 A.2d 868, 871 (1986) (holding that indemnity is "a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which

occasioned the loss").

Indemnity may be granted only where the one party is actually liable, which is sometimes referred to as "primary" liability, whereas the party seeking indemnity is only "secondarily" liable by virtue of the operation of law. See Tokio Marine & Fire Ins. Co. Ltd. v. McDonnell Douglas Corp., 465 F. Supp. at 794; Sirianni v. Nugent Bros., Inc., 509 Pa. at 571, 506 A.2d at 871; City of Wilkes-Barre v. Kaminski Bros., Inc., 804 A.2d 89, 92-93 (Pa. Commw. Ct. 2002); Mathis v. Philadelphia Elec. Co., 17 Phila. Co. Rptr. 35, 49, 57 (Pa. Comm. Pl. 1987) (quoting Builders Supply Co. v. McCabe, 366 Pa. 322, 325, 328, 77 A.2d 368, 370 (1951)); see also Lewis v. Rosenfeld, No. 00 CV 5368, 2002 WL 441185, at *4 (S.D.N.Y. Mar. 20, 2002) (citations omitted); Kerrigan v. Villei, 22 F. Supp. 2d 419, 426 (E.D. Pa. 1998) (holding that "[i]n Pennsylvania, indemnity is available '(1) where primary versus secondary or vicarious liability is present; or (2) where there is an express contract to indemnify'") (quoting Richardson v. J.F.K. Mem. Hosp., 838 F. Supp. 979, 989 (E.D. Pa. 1993)).

"Indemnity may arise either from [a] contract or may be implied in law." Tokio Marine & Fire Ins. Co. Ltd. v. McDonnell Douglas Corp., 465 F. Supp. at 794 n.4. "Indemnity flows from either a contractual or other relationship between the actual wrongdoer and another, such as that of an employer and employee . . . or from a duty imposed by a statute . . . ." Allstate Ins. Co. v. N.Y., 152 Misc. 2d 869, 871, 579 N.Y.S.2d 308, 310 (N.Y. Ct. Cl. 1991); see also Kerrigan v. Villei, 22 F. Supp. 2d at 426. In the absence of a contractual clause providing for indemnification, courts have applied the equitable concept of "'implied liability'" to cover cases where contribution was not available and would lead to an unjust result. Tokio Marine & Fire Ins. Co. Ltd. v. McDonnell Douglas Corp., 465 F. Supp. at 794; see also Trustees of the Int'l

11

Bhd. of Elec. Workers Local 98 Pension Plan v. Aetna Cas. & Sur. Co., No. 97 CV 7407, 1998

WL 614769, at * 2 (E.D. Pa. 1998) (citing cases). "Common-law indemnification seeks to

ensure that a party not at fault will not be forced to endure the loss." Tokio Marine & Fire Ins.

Co. Ltd. v. McDonnell Douglas Corp., 465 F. Supp. at 794; see also Willet v. Pa. Med.

Catastrophe Loss Fund, 549 Pa. 613, 622, 702 A.2d 850, 854 (1997). Whether a party has the

right to indemnification is generally a jury question under both New York and Pennsylvania law.

See Tokio Marine & Fire Ins. Co. Ltd. v. McDonnell Douglas Corp., 465 F. Supp. at 794; see

also Ridgeway Court, Inc. v. James J. Canavan Ins. Assocs., 348 Pa. Super. 136, 140-41, 501

A.2d 684, 686-87 (Pa. Super. Ct. 1985) (quoting Martinique Shoes, Inc. v. New York

Progressive Wood Heel Co., 207 Pa. Super. 404, 217 A.2d 781 (Pa. Super. Ct. 1966)).


     b) Contract Interpretation

In this case, Ryder is seeking indemnification under both a provision in the Truck Lease

Agreement and under the concept of implied liability. As an initial matter, the parties dispute

the meaning of the language of the indemnification provision in the Truck Lease Agreement. In

interpreting contractual indemnification agreements, the laws of Pennsylvania and New York

apply the same general principles of contract construction. Under New York and Pennsylvania

law, "[i]t is axiomatic that an indemnity contract is interpreted to effectuate the intention of the

parties as expressed in the unequivocal language of the contract." Gibbs-Alfano v. Burton, 281

F.3d 12, 19 (2d Cir. 2002); see Ratti v. Wheeling Pittsburgh Steel Corp., 758 A.2d at 702

(applying Pennsylvania law and holding that the "well-settled rules generally governing the

requisites and validity of contracts also apply to the interpretation of contracts of indemnity").

New York courts, in construing an indemnity agreement, look at the "purpose of the entire agreement and the surrounding facts and circumstances." Podhaskie v. Seventh Chelsea Assocs., 3 A.D.3d 361, 362, 770 N.Y.S.2d 332, 334 (1st Dep't 2004) (citing Szalkowski v. Asbestospray Corp., 259 A.D.2d 867, 869, 686 N.Y.S.2d 243 (3d Dep't 1999)). In the absence of an independent legal duty to indemnify, New York courts have held that "'a contract assuming that obligation [to indemnify] must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.'" Gibbs-Alfano v. Burton, 281 F.3d at 19 (quoting Hooper Assocs. v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 548 N.E.2d 903, 549 N.Y.S.2d 365 (1989)); see also Altchek v. DiGennaro, 214 A.D.2d 527, 528, 624 N.Y.S.2d 461, 462 (2d Dep't 1995).

Consistent with New York law, Pennsylvania courts have held that "[t]he primary purpose in construing indemnity contracts like other contracts is to ascertain and give effect to the intention of the parties." Ratti v. Wheeling Pittsburgh Steel Corp., 758 A.2d at 702; see also First Nat'l Bank of Spring Mills v. Walker, 289 Pa. 252, 258-59, 137 A. 257, 259 (1927) (holding that "'[a] contract of indemnity should be construed so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the intention of the parties it should apply'") (quoting 31 C.J. 429). The parties' intentions are "evidenced by the entire contract," Fox Park Corp. v. James Leasing Corp., 433 Pa. Super. 505, 511, 641 A.2d 315, 318 (Pa. Super. Ct. 1994), and the contract is construed "in light of the situation of the parties and the circumstances connected with the transaction." Richardson v. J.F.K. Mem. Hosp., 838 F. Supp. at 990; see also Kerrigan v. Villei, 22 F. Supp. 2d at 426.

Thus, it is clear that there is no conflict between New York and Pennsylvania law to the

13

extent that they both permit contractual indemnification "as long as the agreement to indemnify is 'clear and unequivocal.'" Kiewit Eastern Co., Inc. v. L & R Constr. Co., Inc., 44 F.3d 1194, 1199 (3d Cir. 1995) (citing Ruzzi v. Butler Petroleum Co., 527 Pa. 1, 588 A.2d 1, 4 (1991)); see also Gibbs-Alfano v. Burton, 281 F.3d at 19.

### c) Indemnification in the Context of Settlement

There does, however, appear to be a conflict in the elements required to be shown before indemnification will be enforced in the context of a settlement of the claims. Under both New York and Pennsylvania law, "indemnity will not be granted to a 'volunteer.'" Tokio Marine & Fire Ins. Co. Ltd. v. McDonnell Douglas Corp., 465 F. Supp. at 794; see also Willard v. Interpool, Ltd., 758 A.2d 684, 687-88 (Pa. Super. Ct. 2000). When a party voluntarily settles a claim and thereafter seeks indemnification from a third party indemnitor, the indemnitee must show that the amount of settlement was reasonable and that the indemnitee would have been actually liable. See Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 316-17 (3d Cir. 1985); Durabla Mfg. Co. v. Goodyear Tire and Rubber Co., 992 F. Supp. 657, 659 (S.D.N.Y. 1998); Consol. Rail Corp. v. Youngstown Steel Door Co., 695 F. Supp. 1577, 1581 (E.D. Pa. 1988); Carey Transp., Inc. v. Greyhound Corp., 80 B.R. 646, 652 (S.D.N.Y. 1987); Daily Express, Inc. v. Northern Neck Transfer Corp., 490 F. Supp. 1304, 1307 (M.D. Pa. 1980); Alberto v. Nassau Sling Co., 11 A.D.3d 571, 572, 782 N.Y.S.2d 677, 678 (2d Dep't 2004); Jemal v. Lucky Ins. Co., 260 A.D.2d 352, 353, 687 N.Y.S.2d 717, 717-18 (2d Dep't 1999); Mount Vernon Fire Ins. Co. v. Trans World Maint. Serv., Inc., 169 A.D.2d 519, 520, 564 N.Y.S.2d 375, 377 (1st Dep't 1991); Tugboat Indian Co. v. A/S Ivarans Rederi, 334 Pa. 15, 21,

5 A.2d 153, 156 (1939); <u>Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.</u>, 207 Pa. Super. at 409, 217 A.2d at 783-84. The basis for that liability is "found in the tort plaintiff's complaint." <u>Tokio Marine & Fire Ins. Co. Ltd. v. McDonnell Douglas Corp.</u>, 465 F. Supp. at 794.

The only notable conflict between the laws of New York and Pennsylvania turns on whether or not the indemnitee is required to show actual liability when the indemnitor has notice of the settlement. Under New York law, the rule is that "[w]hen an indemnitor has notice of the claim against it . . . the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make." <u>Coleman v. J.R.'s Tavern, Inc.</u>, 212 A.D.2d 568, 568-69, 622 N.Y.S.2d 334, 334 (2d Dep't 1995) (citing <u>Gray Mfg. Co. v. Pathe Indus., Inc.</u>, 33 A.D.2d 739, 305 N.Y.S.2d 794 (1st Dep't 1969), <u>aff'd</u>, 26 N.Y.2d 1045 (1970)); <u>accord</u> <u>Goldmark Indus., Ltd. v. L.A. Tessoriere</u>, 256 A.D.2d 306, 307, 681 N.Y.S.2d 327, 328 (2d Dep't 1998); <u>see, e.g.</u>, <u>Kwack v. Gross</u>, 6 Misc.3d 1021(A), at *2 (N.Y. Sup. Feb. 7, 2005). "Where [] the indemnitee fails to notify the indemnitor of a settlement with the claimant, indemnification is conditioned upon the indemnitee's demonstration that it would have been liable to the claimant, that there was no good defense, and that the settlement was in a reasonable amount." <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Red Apple Group, Inc.</u>, 309 A.D.2d 657, 657, 767 N.Y.S.2d 68, 69 (1st Dep't 2003) (citing <u>Chase Manhattan Bank v. 264 Water St. Assocs.</u>, 222 A.D.2d 229, 231, 634 N.Y.S.2d 687 (1st Dep't 1995); <u>Feuer v. Menkes Feuer Inc.</u>, 8 A.D.2d 294, 299, 187 N.Y.S.2d 116 (1st Dep't 1959)).

By contrast, the law in Pennsylvania is that the indemnitee must show actual liability even if the indemnitor has notice of the settlement. <u>See</u> <u>Besser Co. v. Paco Corp.</u>, 671 F. Supp.

15

1010, 1013 (M.D. Pa. 1987) (citing <u>Martinique Shoes, Inc. v. New York Progressive Wood Heel</u>

<u>Co.</u>, 207 Pa. Super. at 409, 217 A.2d at 783-84); <u>see also</u> <u>Philadelphia Elec. Co. v. Hercules,</u>

<u>Inc.</u>, 762 F.2d at 316-17. Even where the indemnitor has notice of the settlement, the indemnitee

"assumes the risk in an action against the indemnitor of proving not only that he was liable to the

third party, but also that the amount of settlement was reasonable." <u>Daily Express, Inc. v.</u>

<u>Northern Neck Transfer Corp.</u>, 490 F. Supp. at 1307; <u>cf.</u> <u>Ultramed, Inc. v. Beiersdorf-jobst, Inc.</u>,

98 F. Supp. 2d 609, 611-12 (M.D. Pa. 1998) (holding that "if no notice was received, defendant

will have the opportunity to dispute the need to settle as well as the amount paid"); <u>Cleveland</u>

<u>Osteopathic Hosp., Inc. v. Nash</u>, 43 Pa. D. & C. 2d 623, 625 (Pa. Com. Pl. 1967) (holding that if

notice was not properly given, the law in Pennsylvania puts the burden on the "indemnitee to

show that the settlement was properly made" since if proper notice is given, the "indemnitor has

the opportunity to participate in the settlement and to protect himself against a settlement made

in bad faith").

 These principles appear to apply regardless of whether the issue of indemnification arises

in the context of a contractual provision or in the context of a claim based on common law

equitable principles. <u>See</u> <u>Daily Express, Inc. v. Northern Neck Transfer Corp.</u>, 490 F. Supp. at

1307. However, courts recognize that the parties may agree to contract out of the actual liability

requirement. <u>See</u> <u>Volkswagen of America, Inc. v. Bob Montgomery, Inc.</u>, No. 82 CV 3598, 1985

WL 2824, at *3 (E.D. Pa. Sept. 25, 1985) (holding that clause in indemnification agreement

expressly requires indemnitor to indemnify indemnitee where the indemnitor is "potentially or

allegedly negligent"); <u>see also</u> <u>Best Products Co. v. A.F. Callan and Co.</u>, No. 90 CV 5329, 1997

WL 83737, at *7-8 (E.D. Pa. Feb. 26, 1997) (holding that the indemnification clause did not

"evidence an intent to alter Pennsylvania's established rule predicating indemnity on actual liability" and therefore did not alter such rule); cf. Conopco, Inc. v. Imperial Chem. Indus. PLC, No. 97 CV 5529, 1999 WL 1021077, at * 3-6 (S.D.N.Y. Nov. 8, 1999) (holding that reading of an indemnification clause is subject to plain language rules of contractual interpretation).

Thus, absent clear contractual language exempting the party seeking indemnity from proving actual liability, Pennsylvania courts require a showing of actual liability, whereas New York courts do not require such a showing.

2. Choice of Law

Given that an actual conflict of laws does exist, and since the forum state's choice of law rules govern in a diversity action such as this, see Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. at 496-97, the Court looks to New York's choice of law rules to determine which state's substantive law applies here. In the instant case, defendant Ryder has cross-claims for both a contractual indemnification claim sounding in contract and a common law indemnification claim sounding in tort. New York, as the forum state, uses different tests for determining which law to apply to claims arising under contract law and to claims arising under tort law. See Lazard Freres & Co., v. Protective Life Ins. Co., 108 F.3d 1531, 1539-40 (2d Cir. 1997). Indeed, it is well established that under New York's choice of law rules, "the law of different jurisdictions can apply to the tort claims and the contract claims in a given suit." Med. Research Assocs. v. Medcon Fin. Servs., Inc., 253 F. Supp. 2d 643, 648 (S.D.N.Y. 2003) (quoting Lazard Freres & Co., v. Protective Life Ins. Co., 108 F.3d at 1540); see Allianz Ins. Co. v. Otero, 353 F. Supp. 2d 415, 423 (S.D.N.Y. 2004).

a) <u>Contractual Indemnification</u>

We first turn to the question of which law applies to the contractual indemnity claim. In contract cases, New York courts utilize a "center of gravity" or "grouping of contacts" approach. <u>See</u> <u>Babcock v. Jackson</u>, 12 N.Y.2d 473, 481-82, 613 N.E.2d 279, 283-84, 240 N.Y.S.2d 904, 908 (1963); <u>see also</u> <u>I.B.M. Corp. v. Liberty Mut. Ins. Co.</u>, 363 F.3d at 143. Under the center of gravity test, courts consider the various significant contacts with each jurisdiction to determine which state's law applies. <u>See</u> <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d at 1539; <u>Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.</u>, 84 N.Y.2d 309, 317-19, 642 N.E.2d 1065, 1068-69, 618 N.Y.S.2d 609, 612-13 (1994). Among other things, courts consider "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d at 1539; <u>see also</u> <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Hicks, Muse, Tate & Furst, Inc.</u>, No. 02 CV 1334, 2002 WL 1313293, at *6 (S.D.N.Y. 2002); <u>In re Allstate Ins. Co. v. Stolarz</u>, 81 N.Y.2d 219, 227, 613 N.E.2d 936, 940, 597 N.Y.S.2d 904, 908 (1993). While the "places of contracting and performance[] are given the heaviest weight in this analysis," <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d at 1539 (citing <u>In re Allstate Ins. Co. v. Stolarz</u>, 81 N.Y.2d at 226, 613 N.E.2d at 940, 597 N.Y.S.2d at 907), another factor that may be considered is any public policy concerns, "'where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests.'" <u>Id.</u>; <u>see also</u> <u>O'Neill v. Yield House Inc.</u>, 964 F. Supp. 806, 810 (S.D.N.Y. 1997); <u>Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.</u>, 84 N.Y.2d at 319-20, 642 N.E.2d at 1069-70, 618 N.Y.S.2d at

613-14.

Applying this analysis to the facts in this case, it appears that Pennsylvania law would apply to the contractual indemnification claim at issue based on the relevant contacts of the contracting parties with Pennsylvania. Ryder is a Florida corporation, with its main headquarters and principal place of business in Florida. (Compl. ¶ 1). Atkinson's principal place of business is in the State of Pennsylvania, and defendant Patterson is also a resident of the State of Pennsylvania. (Id.) The Truck Lease Agreement was negotiated in Pennsylvania and the subject of the Agreement, Ryder's vehicles, were registered and garaged in Pennsylvania. (Ryder Mem. of Law at 2).[5] Thus, it appears that the contract was to be performed mainly in Pennsylvania. (Id.)

By contrast, the New York contacts are limited to the fact that the plaintiffs' intestate was a resident of New York and the accident occurred in New York. (Compl. ¶ 1, 12, 13). These latter two contacts, although relevant to the tort analyses, see infra at 23-26, are not significant contacts to be considered in the grouping of contacts approach because plaintiff was not one of the parties to the Truck Lease Agreement. Considering the relevant factors enunciated in the Lazard Freres case, here the places of contracting and performance, the location of the vehicles that are the subject of the Truck Lease Agreement, and the domicile of Atkinson are all in Pennsylvania; thus, Pennsylvania law should be applied in analyzing the contractual indemnification claim.

Ryder, however, argues that New York has an expressed public policy interest in

---

[5]Citations to "Ryder Mem. of Law" refer to Ryder's Memorandum of Law in response to the choice of law issues posed by this Court, dated June 30, 2003.

enforcing the principles underlying Section 388 of the VTL, and that applying Pennsylvania law to this contractual indemnification claim will thwart that policy. (Ryder Mem. of Law at 2-3).

The sole source of Ryder's liability is derived from a New York statute, VTL § 388(1), which holds the owner of a vehicle liable for the "negligence of a person operating the vehicle with the permission of the owner." Griffin v. Fun Jung La, 229 A.D.2d 468, 469, 645 N.Y.S.2d 528, 528 (2d Dep't 1996). The VTL provision at issue states:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for the death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with permission, express or implied of such owner.

VTL § 388(1). Contrary to Ryder's argument, the interest intended to be protected by this VTL provision is not that of the owner of the vehicle, nor is it a policy designed to ensure "recovery against actual tortfeasors." (Ryder Mem. of Law at 2). Rather, the provision is designed to ensure that injured plaintiffs in New York have recourse to seek compensation not only from the driver of a vehicle responsible for causing damage to the plaintiff but also from the owner who permitted the driver to use his vehicle. See Morris v. Snappy Car Rental, Inc., 84 N.Y.2d 21, 27, 637 N.E.2d 253, 255, 614 N.Y.S.2d 362, 363 (1994). "Section 388's enactment was designed to ensure access by injured persons to 'a financially responsible insured person against whom to recover for injuries.'" Id. (quoting Plath v. Justus, 28 N.Y.2d 16, 20, 268 N.E.2d 117, 319 N.Y.S.2d 433 (1971)). Moreover, the VTL provision does not address the concern at issue here - - namely, the indemnification of the vehicle's owner by the actual tortfeasor, the driver. The New York Court of Appeals has explicitly held that VTL § 388 does not "abrogate the right of

20

indemnification," id. at 28-29, 637 N.E.2d at 256, 614 N.Y.S.2d at 365, and that an

"indemnification agreement for damages above and beyond the statutorily-required insurance

may be enforced." AIU Ins. Co. v. ELRAC, Inc., 287 A.D.2d 668, 669, 732 N.Y.S.2d 105, 106

(2d Dep't 2001). Thus, the policy concern reflected in this section of the VTL does not suggest

that the center of gravity test should be abandoned with respect to the contract in this case.

Indeed, Atkinson suggests that there is a contrary policy at issue that further supports the

application of Pennsylvania law and supports their position that they should not be held

responsible for damages greater than the amount allowed for by the PGA. Specifically, Atkinson

cites the recent decision of the Superior Court of New Jersey in Flaherty v. Safran, where the

court held that the New Jersey Guaranty Act was created to protect policyholders from the

insolvency of their insurers. 367 N.J. Super. 565, 571, 843 A.2d 1198, 1201-02 (N.J. Super. Ct.

Law Div. 2003).

There, in a situation similar to the one at issue here, the plaintiff was injured by an

Academy bus and Academy, which was insured by Reliance, offered to pay the $300,000.00

amount allocated from the insurance fund to settle the action. The plaintiff then sought to

recover prejudgment interest from the driver. The court held that the New Jersey statute

establishing the guaranty fund was intended to protect innocent policyholders from financial loss

due to the insolvency of their insurance company. However, Flaherty has since been overruled

by Johnson v. Braddy, where the New Jersey court held that "[w]here either an innocent injured

party or a tortfeasor must bear the adverse financial consequences of the insolvency of the

tortfeasor's insurer and the $300,000 limit on the Association's liability, it is more reasonable to

infer a legislative intent to favor the injured party." 376 N.J. Super. 215, 223, 869 A.2d 964, 969

(N.J. Super. Ct. App. Div. 2005). Although the court in Johnson was discussing New Jersey policy and interpreting the New Jersey statute establishing the guaranty fund, the statute in Pennsylvania is substantially similar, and although the Pennsylvania courts would not necessarily be bound by the New Jersey court's decision, the analysis in Johnson is more persuasive than that of the Flaherty court.

Indeed, in Bethea v. Forbes, 519 Pa. 422, 424, 548 A.2d 1215, 1216 (1988), the Supreme Court of Pennsylvania noted that the PGA "was enacted to give a measure of protection to policyholders and claimants who are faced with financial loss because of the insolvency of certain carriers of property and casualty insurance." See also Bell v. Slezak, 571 Pa. 333, 341, 812 A.2d 566, 570 (2002) (quoting 40 P.S. § 991.1801(1)). The court in Burke v. Valley Lines, Inc., also commented in a footnote that:

> Although instantly appellant's damages were less than PIGA's statutory limit of liability, we note that if his damage award had been in excess of the $300,000.00 cap, then he could have collected directly from appellees the amount which exceeded the statutory cap. Such a ruling would promote the common law rule that the tortfeasor is liable for the full extent of damage caused by his negligence, while at the same time insuring that the public policy underlying the PIGA is enforced.

421 Pa. Super. 362, 370 n.5, 617 A.2d 1335, 1339 n.5 (Pa. Super. Ct. 1992); see also Bethea v. Forbes, 519 Pa. at 426-27, 548 A.2d at 1217 (holding that "[i]t is also a fundamental and general principle that a plaintiff in such action is entitled to compensation from the tortfeasor to the full extent of the injury sustained"). Thus, while Pennsylvania courts have not expressly reached the same conclusion as the court in Johnson, the Court finds that defendant Atkinson's policy argument does not favor either Pennsylvania or New York in determining the appropriate choice

22

of law to apply to Ryder's contractual indemnification claim.

Accordingly, based on an analysis of the relevant factors under New York's "center of gravity" test, this Court concludes that Pennsylvania law governs the contractual indemnification claim in this case.


b) Common Law Indemnification

As for the common law indemnity claim, the court in Allianz Insurance Company v. Otero, held that the law applicable to the underlying tort claim determines the appropriate law to apply in deciding whether one tortfeasor has the right to seek indemnity from another tortfeasor. 353 F. Supp. 2d at 422-23 (citing Restatement (Second), Conflict of Laws 173). In New York, the "relevant analytical approach to choice of law in tort actions" is an "interest analysis." Schultz v. Boy Scouts, 65 N.Y.2d 189, 197, 480 N.E.2d 679, 684, 491 N.Y.S.2d 90, 95 (1985). Under this analysis, courts select the "law of the jurisdiction, which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Babcock v. Jackson, 12 N.Y.2d at 481, 613 N.E.2d at 283, 240 N.Y.S.2d at 908; see also Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d at 1539; Schultz v. Boy Scouts, 65 N.Y.2d at 197, 480 N.E.2d at 684, 491 N.Y.S.2d at 95 (holding that the "law of the jurisdiction having the greatest interest in the litigation will be applied").

In cases involving tort claims, New York courts have further distinguished between laws that are conduct regulating and laws that are loss allocating. See Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521, 644 N.E.2d 1001, 1002, 620 N.Y.S.2d 310, 311 (1994). If the law at issue is intended to regulate the conduct between the parties, then New York courts generally apply the

23

law of the jurisdiction where the tort occurred because that jurisdiction has the greatest interest in regulating conduct within its borders. See HSA Residential Mortgage Srvs. of Texas v. Casuccio, 350 F. Supp. 2d 352, 362-63 (E.D.N.Y. 2003); Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72, 612 N.E.2d 277, 280, 595 N.Y.S.2d 919, 922 (1993). Where the rule at issue deals with the allocation of loss after the tort has occurred, then the courts consider other factors, "chiefly the parties' domiciles." Cooney v. Osgood Mach., Inc., 81 N.Y.2d at 72, 612 N.E.2d at 280, 595 N.Y.S.2d at 922.

Here, the underlying tort occurred in New York, but the question raised by the common law indemnification claim is a question of loss distribution. Under Neumeier v. Kuehner, 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972), where both parties are domiciled in the same jurisdiction, the domiciliary jurisdiction has the greatest interest in enforcing its loss allocation rules. See Sheldon v. PHH Corp., 135 F.3d 848, 853 (2d Cir. 1998). Where, however, the parties are domiciled in different states, and the conduct occurs in the state of one of the domiciliaries, the law of the state where the injury occurs generally governs. Esco Fasteners, Co. v. Korea Hinomoto Co., 928 F. Supp. 252, 256 (E.D.N.Y. 1996) (citing Cooney v. Osgood Mach., Inc., 81 N.Y.2d at 73-74, 612 N.E.2d at 281, 595 N.Y.S.2d at 923). Under the "place of injury" test adopted by Neumeier in its second rule, the New York Court of Appeals has recognized that "when the plaintiff[] is injured in the place of domicile and would be entitled to recover, the out-of state driver should generally be unable to interpose the law of his or her domicile to defeat recovery." Cooney v. Osgood Mach., Inc., 81 N.Y.2d at 73-74, 612 N.E.2d at 281, 595 N.Y.S.2d at 923.

Under the third Neumeier rule, where the parties are of different domiciles, New York

24

courts look to the law of the place where the accident occurred, unless "'displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants.'" Id. (quoting Neumeier v. Kuehner, 31 N.Y.2d at 128, 286 N.E.2d at 457-58, 335 N.Y.S.2d at 70); accord Gilbert v. Seton Hall Univ., 332 F.3d 105, 109-10 (2d Cir. 2003). This rule assumes that the situs of the tort is an appropriate "tie breaker" because "that is the state with which both parties have purposefully associated themselves in a significant way." Cooney v. Osgood Mach., Inc., 81 N.Y.2d at 73-74, 612 N.E.2d at 281, 595 N.Y.S.2d at 923; accord Caruolo v. John Crane, Inc., 226 F.3d 46, 58 (2d Cir. 2000); Esco Fasteners, Co. v. Korea Hinomoto Co., 928 F. Supp. at 256.

In this case, plaintiffs were domiciled in New York; Atkinson and Patterson were domiciled in Pennsylvania; and Ryder was in Florida. Under either the second or third Neumeier rules, New York, as the situs of the accident, would be the state whose law would govern the tort claims of the plaintiffs as well as the loss allocation issues between defendants. Moreover, New York's interest in enforcing its public policy and in ensuring compensation for injured victims through VTL § 388 is a significant interest that weighs heavily in favor of applying New York law to the common law indemnity claims here. Ryder is only a party to this case because plaintiffs invoked New York's VTL § 388, making the owner of the vehicle liable for the driver's conduct. Indeed, if Pennsylvania's tort law were applied, Ryder would not even have been subject to suit because Pennsylvania does not appear to have a statute similar to VTL § 388 which would hold the owner of the vehicle responsible. Had plaintiffs invoked Pennsylvania law, Atkinson would have had to bear the entire loss alone. Moreover, Atkinson and Patterson,

25

by driving their vehicle into New York, voluntarily associated themselves with the State of New York, subjecting themselves to New York's rules of the road.

Accordingly, under New York's choice of law principles, it appears that the appropriate law to be applied to the common law indemnification claim is the law of the State of New York.

## C. Ryder's Contractual Indemnification Claim

Having determined that the law of Pennsylvania governs Ryder's claim for contractual indemnification, the Court turns to an analysis of the indemnification provision in the Truck Lease Agreement.

## 1. The Lease Provision

Ryder contends that under a provision in its Truck Lease Agreement, Atkinson is required to indemnify Ryder for any amounts over the $300,000.00 contributed by Reliance to settle the action. The relevant language of the indemnification provision in the Truck Lease Agreement states:

> 10.   Liability Insurance and Indemnity:
>
>                 *    *    *
>
> F.   Indemnification for Statutory Requirements on Insurer Insolvency. You agree to defend, release, indemnify and hold Ryder harmless for all damages and defense costs which Ryder may be required to pay as a result of any statutory requirements of insurance or as a result of the insolvency of your insurance company and which Ryder would not otherwise be required to pay under this agreement.

Ryder contends that this contract language is clear and unambiguous and requires Atkinson to

26

indemnify Ryder in these circumstances where it is undisputed that Atkinson's insurer, Reliance, is insolvent. Atkinson contends that the language provides for indemnification only when there is a "required" payment; the indemnification clause does not apply where, as here, Ryder entered into a voluntary settlement of the litigation.

The contractual indemnity clause of the Truck Lease Agreement is clear and unambiguous that Atkinson will indemnify Ryder for "all damages and defense costs which Ryder may be required to pay as a result of . . . the insolvency of [Atkinson's] insurance company." There is no dispute that at the time of the accident, Atkinson maintained insurance coverage of $1,000,000.00 with Reliance Insurance Company. Ryder was a named insured under the Reliance policy. When Reliance became insolvent in October 2001, the PPCIGA thereby became obligated to pay for any covered claims, but under the PGA, the amount recoverable from the PPCIGA was limited to $300,000.00. The parties agree that Atkinson agreed to settle this litigation for the $300,000.00 amount to be paid out of the PGA fund.[6] Ryder, which could be held liable to plaintiffs only pursuant to New York's VTL § 388, recognized that the case would not settle for $300,000.00 and thus, made the decision to contribute an additional $700,000.00 in order to resolve the litigation and to avoid the real risk of an even larger verdict at trial, given the extent of the plaintiffs' injuries. Ryder argues that it is clear that the parties, when agreeing to indemnification, contemplated payments made for both judgment and settlement since those are both probable outcomes of litigation in Pennsylvania or any other jurisdiction.

Atkinson argues that because there is no specific language in the lease agreement that

---

[6]It is unclear how much Atkinson would have agreed to settle for if Reliance had not become insolvent.

refs to indemnification in the context of a settlement, Ryder should not be permitted to rely on the agreement in seeking indemnification from Atkinson for the $700,000.00. Atkinson contrasts the language in the lease agreement at issue with the language contained in a contract signed by both parties in February of 1999 concerning the lease of a premises for the maintenance of leased vehicles. In that February 1999 contract, the parties make specific reference to indemnification in the context of a settlement. The clause provides:

> If the indemnifying party fails to pay or to undertake to defend against such claim, then the damaged party may either, pay, settle or contest such claim, in which case the indemnifying party shall reimburse the damaged party for all reasonable costs and expenses, including reasonable attorney's fees, incurred in connection with the settlement or contest of such claim, and hold the damaged party free and harmless therefrom.

(Ex. E to Connors Aff.).

Unlike this February 1999 premises lease agreement, the Truck Lease Agreement does not make specific reference to settlements, jury verdicts or judgments. There is also no language that deals with the issue of when the indemnitor refuses to defend or pay a claim. However, under Pennsylvania law, the interpretation of a contract must be made within the four corners of the contract and the attendant circumstances. See Richardson v. J.F.K. Mem. Hosp., 838 F. Supp. at 990; Fox Park Corp. v. James Leasing Corp., 433 Pa. Super. at 511, 641 A.2d at 318. Whatever the intentions of the parties when they signed this later February 1999 agreement concerning the lease of premises for maintenance, or whatever language was used in the premise lease agreement, the language and circumstance of that contract cannot be used to determine the intention of the parties to indemnify pursuant to the Truck Lease Agreement signed seven months earlier.

28

More pertinent to the inquiry as to the parties' intentions are the other provisions in the Truck Lease Agreement itself which deal with indemnification. See Fox Park Corp. v. James Leasing Corp., 433 Pa. Super. at 511 (noting that the parties' intentions are to be gleaned from "the entire contract"). The Truck Lease Agreement contains a lengthy section entitled "Liability Insurance and Indemnity," of which the clause at issue is only one of nine subclauses within this section defining Atkinson's responsibility to obtain insurance and to indemnify Ryder against various losses. The main provision requires Atkinson to "furnish and maintain a policy of automobile liability insurance at its sole cost, with terms acceptable to Ryder." (Ex. D to Connors Aff.). Ryder is to be listed as a named insured on the policy; Ryder has the right to approve the insurance company selected by Atkinson, and the policy may not be cancelled without 30 days notice to Ryder. (Id.) The policy provides that if Atkinson fails to procure the required insurance, Atkinson agrees "to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs arising out of or related to the ownership, maintenance, use or operation of any Vehicle." (Id.)

Another provision provides that Atkinson will "defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs: (1) in excess of or not covered by Liability Insurance. . . arising out of or related to the ownership, maintenance, use or operation of any Vehicle. . .; (2) arising out of or related to death or injury to you, your drivers, employees and agents caused by or related to the ownership, maintenance, use or operation of a Vehicle. . . ." (Id.) There is a separate provision dealing with indemnification for responsibility if the Ryder vehicle is used to transport hazardous materials. (Id.) Again, the language makes Atkinson liable for indemnification "for all Damages and Defense Costs arising out of or related to any

29

cause, including, but not limited to, your negligence, Ryder's negligence. . . ." (Id.)

All of these provisions make it clear that Ryder expected and Atkinson agreed that Atkinson would indemnify Ryder against all claims, regardless of who was responsible for the injury, so long as it arose out of the use or operation of the vehicle. This included not only indemnification for injuries caused by the transport of hazardous materials, but for damages in excess of the insurance policy that Atkinson was required to procure. The clear intent of these clauses was not to limit the indemnification to payments "required" by a judgment only. The operative language in each of these provisions was that Atkinson would cover any damages and defense costs "arising out of or related to" the operation of the vehicle. Viewed in light of the intent of the parties as expressed in these clauses, which precede the provision at issue here, it seems clear that the language, "indemnify and hold Ryder harmless for all damages and defense costs which Ryder may be required to pay . . . as a result of the insolvency of your insurance company" was not meant to preclude Ryder from settling claims and seeking indemnity from Atkinson if the insurer became insolvent. The word "required" was meant only to refer to a situation where, because there was inadequate or no insurance, Ryder could be held responsible.

This reading of the word "required" is further supported by the last phrase in the provision: "and which Ryder would not otherwise be required to pay under this agreement." This clause makes it clear that what Ryder intended was that in the event the insurer became insolvent, Ryder would be covered and indemnified from liability for all of the circumstances outlined in the Truck Lease Agreement, not just limited to indemnification from judgments only. See Ratti v. Wheeling Pittsburgh Steel Corp., 758 A.2d at 702 (holding that in construing indemnity contracts, the court's "primary purpose. . .is to ascertain and give effect to the

30

intention of the parties"). Indeed, this provision was intended to ensure against the very situation occurring here - - that but for the insolvency of the insurance company, Ryder would have been completely protected. There is nothing in the totality of these indemnification provisions that suggest that indemnification was contemplated only where a judgment has been entered against Ryder.

Thus, this Court holds that the parties, when entering into the Truck Lease Agreement, intended to have Atkinson indemnify Ryder in cases such as the instant one where Ryder is required to pay a portion of the settlement solely as a result of the insolvency of Atkinson's insurance company.

2. Application of Pennsylvania Law of Indemnification

Having determined that the Truck Lease Agreement contains a provision for indemnification under these circumstances, the question is whether under Pennsylvania law, indemnity will be permitted where there has, as here, been a settlement of the claim. Under Pennsylvania law, the party seeking indemnification must show that the settlement was reasonable and that the indemnitee would have been actually liable. See Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d at 316-17; Consol. Rail Corp. v. Youngstown Steel Door Co., 695 F. Supp. at 1581; Daily Express, Inc. v. Northern Neck Transfer Corp., 490 F. Supp. at 1307; Tugboat Indian Co. v. A/S Ivarans Rederi, 334 Pa. at 21, 5 A.2d at 156; Martinique Shoes, Inc. v. New York Progressive Wood Heel Co., 207 Pa. Super. at 409, 217 A.2d at 783-84.

Atkinson contends that summary judgment imposing contractual indemnification should be denied because Ryder has not demonstrated that the settlement was either reasonable or that

31

there was actual liability on the part of Atkinson.

(a) Reasonableness of Settlement

As discussed supra, regardless of whether or not notice is given, the settling indemnitee assumes the risk of "proving not only that he was liable to the third party, but also that the amount of settlement was reasonable." Daily Express, Inc. v. Northern Neck Transfer Corp., 490 F. Supp. at 1307. However, it is also clear that if notice was properly given, the "indemnitor has the opportunity to participate in the settlement and to protect himself against a settlement made in bad faith." Cleveland Osteopathic Hosp., Inc. v. Nash, 43 Pa. D. & C. 2d at 625. In the instant case, Atkinson and Patterson not only had notice of the settlement, they were parties to the underlying action, and parties to the settlement.

Since Atkinson and Patterson failed to object to the reasonableness of the settlement when they decided to contribute the $300,000.00 to the settlement, and their attorney, in fact, did authorize the contribution of such funds to the settlement, Atkinson and Patterson cannot now argue that the settlement was unreasonable. Objectively, the universe of judgments in wrongful death actions discussed by Atkinson, Patterson, and Ryder ranged from $20,000.00 to $4,000,000.00. It seems that given the circumstances of the accident and the serious nature of the decedent's injuries prior to her death, a settlement for $1,000,000.00 was not unreasonable. Furthermore, because the case involved a settlement in a wrongful death action with an estate, this Court was required to consider and pass upon the reasonableness of the settlement prior to approving it. See Forman v. Mt. Sinai Med. Ctr., 128 F.R.D. 591, 594 (S.D.N.Y. 1989) (noting that "because this was a wrongful death claim, the settlement had to be approved (in the form of

32

a Compromise Order) by a court having jurisdiction over the decedent's estate"); see also Bell v. Jolly, 173 Misc.2d 273, 276, 660 N.Y.S.2d 820, 822 (N.Y. Sup. Ct. 1997) (holding that "[t]he court has found only one area wherein judicial approval of settlement of wrongful death claims is unnecessary, namely where all the persons for whose benefit the action is brought (the decedent's distributees) are adults and where all such distributees execute general releases of their claims") (citing cases). Based on the positions taken by the parties at the time, as well as this Court's independent review of the facts and relevant comparable verdicts and settlements, this Court approved the settlement as reasonable.

(b) Actual Liability

Under Pennsylvania law, Ryder must still establish that Atkinson and its employee were "actually liable" for the injuries to plaintiffs' decedent. In the leading Pennsylvania case on the issue, Martinique Shoes, Inc. v. New York Progressive Wood Heel Co., 207 Pa. Super. 404, 217 A.2d 781, plaintiffs in the underlying action sued defendant William Hahn & Co., Inc. ("Hahn") to recover damages for injuries under a breach of warranty claim. Hahn, the only defendant in the underlying case, demanded that Martinique Shoes, Inc. ("Martinique") defend the case, and Martinique in turn notified New York Progressive Wood Heel Co. ("Progressive") to take over the defense. Despite Hahn's demand, neither Martinique nor Progressive undertook the defense, and Hahn eventually settled the case with the plaintiffs. Martinique paid the plaintiffs the amount of the settlement and instituted an action against Progressive for indemnification. In denying Martinique's claim for indemnification, the court held that the requirement of showing

33

actual liability "prevails also in the case of settlements, even with notice."[7] Martinique Shoes,

Inc. v. New York Progressive Wood Heel Co., 207 Pa. Super. at 409, 217 A.2d at 783-84.

Ryder contends that the requirement of the actual liability applied in a case like the one

before this Court, thwarts New York's public policy encouraging settlements. Ryder cites the

dissenting opinion of Justice Sullivan in Zurich Ins. Co. v. Travelers:

> The fundamental flaw in this approach is the notion that the
> underlying questions of tort liability, which have been rendered
> moot by the insurers' settlement of the DiPaola action, can be
> reached and resolved at a trial of this action.  It was precisely to
> avoid an adverse result in the disposition of those issues that the
> DiPaola action was settled.  Thus, the coverage questions must be
> resolved on the basis of the aborted factual record the parties have
> tendered.  Had they wanted a factual resolution of the tort issues,
> they could have obtained the same but, of course, at a substantial
> risk to each of them of an adverse determination.

184 A.D.2d 454, 458-59 (1st Dep't 1992), remanded upon appeal for further proceedings

consistent with dissenting opinion by 81 N.Y.2d 938, 613 N.E.2d 965, 597 N.Y.S.2d 933 (1993).

Indeed, a review of Pennsylvania's law regarding settlements reveals that Pennsylvania

also has a "longstanding public policy which encourages settlements." Muhammad v.

Strassburger, McKenna, Messer, Shilobod and Gutnick, 526 Pa. 541, 546, 587 A.2d 1346, 1348

(1991).  Pennsylvania law "favors settlements and fosters policies that encourage parties to settle

claims without a trial." Bethea v. Forbes, 519 Pa. at 438, 548 A.2d at 1223 (Justice Larsen,

concurring and dissenting opinion).  The Pennsylvania Supreme Court, in reviewing a case where

---

[7] Martinique Shoes differs from the instant case because there, the indemnitor,
Progressive, was not a party to the settlement, whereas here, the indemnitor, Atkinson, was a
party to the settlement.

clients sued their attorneys for legal malpractice in settling their medical malpractice claims, refused to "endorse a rule that will discourage settlements" noting that "settlement of civil litigation is critical to the courts' management of caseloads," and that "to encourage litigation that would undermine the current rate of settlements [would be] a grave injustice and disservice to the citizens of the Commonwealth." Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick, 526 Pa. at 548-50, 587 A.2d at 1349-50.

In this case, where all parties in the underlying action have agreed to a settlement, Pennsylvania's public policy encouraging settlements would be controverted by requiring a showing of actual liability in a cross-claim for indemnification. Here, the indemnitor not only was involved in the settlement negotiations but also contributed funds to the settlement. Imposing a requirement that actual liability first be shown would serve as a disincentive for the owner/lessor/indemnitee Ryder, liable solely under New York law, to settle. It would create a Hobson's choice for Ryder either: (1) to settle with the plaintiffs only to be forced to stand in the shoes of the plaintiffs to prove the negligence of Atkinson and Patterson at a trial; or (2) to proceed to trial in the first instance because its codefendants refuse to pay more than they are insured for, running the risk of an adverse judgment with a much larger jury award for which it would be jointly and severally liable with Atkinson and Patterson.

Moreover, in this case, defendants Atkinson and Patterson not only had notice of the settlement, participated in the settlement discussions, and in fact, contributed to the settlement in consideration of their potential liability, but, in fact, Robert Giannone, the representative from PPCIGA who took over the defense in the case after Reliance became insolvent, determined that

the claim was a covered claim[8] under the PGA. He decided that the PPCIGA would tender the statutory limit of $300,000.00 on behalf of the Reliance insureds, and that the PPCIGA would cease to pay the defense costs for Ryder, Atkinson, and Patterson thirty days after the tender of the $300,000.00 pursuant to the guidelines set forth by the PGA.

Under the PGA, the PPCIGA is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent." 40 P.S. § 1701.201(b)(1)(ii). As such, the PPCIGA has the duty:

> [t]o defend the insured against any suits arising under the policy 'even if such suit is groundless, false, or fraudulent.' Since the insurer thus agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, our cases have held that the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy.

American States Ins. Co. v. State Auto Ins. Co., 721 A.2d 56, 59 (Pa. Super. 1998) (quoting Gedeon v. State Farm Mut. Auto. Ins., 410 Pa. 55, 188 A.2d 320, 321-22 (1963)). One of the stated purposes of the PGA is "[t]o provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. § 991.1801(1).

---

[8] Under the PGA, a covered claim is "an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article." 40 P.S. § 991.1802.

The PPCIGA, acting with all the rights and responsibilities of the insolvent insurer, Reliance, determined after investigation that this litigation was a covered claim under the PGA and that it would be willing to tender $300,000.00 on behalf of the Reliance insureds, presumably in order to "avoid excessive delay in the payment" of the claim and in order to "avoid financial loss to claimants or policyholders as a result of the insolvency" of Reliance in accordance with the goals of the PGA. Rather than agreeing to settle, the PPCIGA could have undertaken to defend the case at trial if it believed it could reasonably avoid paying the plaintiffs or if it believed that a jury would award less than the statutory limit of $300,000.00. Rather, the PPCIGA chose to avoid further costs associated with the defense of the case, thus suggesting that the PPCIGA believed that there was no defense to the claims.

Furthermore, upon tender of the funds from the PPCIGA, defendants Atkinson and Patterson could have used the $300,000.00 to pay for the defense costs associated with taking the underlying case to trial. Counsel for Atkinson and Patterson, who was in charge of the tendered amount and who was present at the settlement discussions, could have objected to the settlement or the use of the $300,000.00 towards the $1,000,000.00 settlement. Instead, by not objecting to the use of the PPCIGA funds, Atkinson and Patterson have gained the benefit of the settlement. They avoided the costs of trial, limited the total amount of their liability, and have been released from further action by plaintiffs.

Unfortunately, this Court could find no authority as to what Pennsylvania courts might do in this situation. One Pennsylvania court has held that even where the defendant has participated in the settlement discussions, actual liability must still be shown before indemnification is permitted in Pennsylvania. See Besser Co. v. Paco Corp., 671 F. Supp. at 1013. In that case, one

defendant, Besser Company, settled with Robert Galdieri, the plaintiff in the underlying action, for $200,000.00 and then after the settlement, Besser instituted an action for indemnity or contribution against its co-defendant Paco. See id. Although Paco had participated in the settlement discussions, Paco had refused to contribute to the settlement, maintaining throughout that there was no liability on the part of either defendant. See id. The Pennsylvania district court held that Besser would have to prove at trial in the indemnity action "the actionable facts on which its liability to Galdieri depended." Id. In a footnote, the court acknowledged that "various jurisdictions [in the Third Circuit] have applied the potential liability theory so that settlement will not be discouraged because of the difficult burden placed upon the indemnitee to establish its right to indemnification." Id. The court went on, however, to express its view that "[w]hen confronted with a situation arising under Pennsylvania law, this court believes that our Court of Appeals would recognize the Pennsylvania court's adherence to the actual liability theory." Id.

This Court, in deference to the Pennsylvania district court's ruling, acknowledges that Pennsylvania's "adherence to the actual liability theory" may extend to cases where the indemnitor has been involved in settlement discussions and even where, as here, there has been an amount paid to settle the action. Although requiring the parties to prove actual liability at a trial would clearly not be efficient nor does it seem to foster the policy of encouraging negotiated resolutions, such a requirement appears to exist under Pennsylvania law and would preclude an award of summary judgment under the contractual indemnification provision in the Truck Lease Agreement.[9]

_____

[9] Although under other circumstances, the parties would be allowed to proceed to trial on this issue of actual liability, this Court finds that indemnification is appropriate under New

D.  Common Law Indemnification

Turning next to the issue of common law indemnification, under New York law, the right

to indemnification will be implied where there is a relationship between the actual tortfeasor and

the party held liable due to statute or vicarious liability in order to prevent an unjust result.  See

City of New York v. Black & Veatch, No. 95 CV 1299, 1997 WL 624985, *9-10 (S.D.N.Y. Oct.

6 1997);  Gen. Conference of Seventh-Day Adventists v. Aon Reinsurance Agency, Inc., 826 F.

Supp. 107, 110 (S.D.N.Y. 1993);  Dunn v. Hurtt, 4 A.D.3d 884, 885, 771 N.Y.S.2d 467, 467-68

(4th Dep't 2004);  Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs., 109 A.D.2d 449,

452-54, 492 N.Y.S.2d 371, 374-75 (1st Dep't 1985);  see, e.g., Hertz Corp. v. Dahill Moving &

Storage Co., 79 A.D.2d 589, 589-90, 434 N.Y.S.2d 386, 387-88 (1st Dep't 1980) (affirming

grant of summary judgment to indemnitee on a claim of common law indemnification where

settlement exceeded the amount indemnitee agreed to cover under lease agreement).  As the court

in Allianz Insurance Company v. Otero noted:

> Conceptually, implied indemnification finds its roots in the
> principles of equity.  It is nothing short of simple fairness to
> recognize that "[a] person who, in whole or in part, has dis-
> charged a duty which is owed by him but which as between
> himself and another should have been discharged by the
> other, is entitled to indemnity."  To prevent unjust
> enrichment, courts have assumed the duty of placing the
> obligation where in equity it belongs.

353 F. Supp.2d at 424 (quoting McDermott v. City of New York, 50 N.Y.2d 211, 216-217, 406

N.E.2d 460, 428 N.Y.S.2d 643 (1980)).  Moreover, in New York, "a contractual right in no way

affects liability under common-law indemnification."  Novak v. BASF Corp., 869 F. Supp. 113,

---

York's common law, see discussion infra at 39-41, and therefore, a trial is unnecessary.

119 (N.D.N.Y. 1994). The New York Court of Appeals has stated that "placing an indemnity provision in [a] contract did not alter [the] common-law duty, for the mere existence of an indemnity provision does not indicate an intent to replace common-law liability with contractual liability. . . ." Hawthorne v. South Bronx Cmty. Corp., 78 N.Y.2d 433, 437, 582 N.E.2d 586, 588, 576 N.Y.S.2d 203, 205 (1991). Thus, the fact that the parties entered into a contractual indemnification provision does not abrogate any responsibility that Atkinson may have under New York common law to indemnify Ryder, which is only subject to vicarious liability, without fault, for Atkinson's actions under New York's VTL. To hold otherwise would result in unjust enrichment to Atkinson.

As discussed supra, New York law recognizes the rule that "[w]hen an indemnitor has notice of the claim against it . . . the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make." Coleman v. J.R.'s Tavern, Inc., 212 A.D.2d at 568-69, 622 N.Y.S.2d at 334 (citing Gray Mfg. Co. v. Pathe Indus., Inc., 33 A.D.2d 739, 305 N.Y.S.2d 794, aff'd 26 N.Y.2d 1045). Clearly, Atkinson and Patterson had notice of the settlement; their attorney participated in the settlement negotiations; they contributed funds to the settlement; they are signatories to the settlement agreement; and they have derived the benefits of the settlement. Furthermore, as this Court has already found, the settlement was reasonable.

Atkinson contends that Ryder must still show actual liability in order to receive common law indemnification. However, unlike Pennsylvania, New York law appears to require a showing of actual liability only "[w]here [] the indemnitee fails to notify the indemnitor of a settlement with the claimant." Nat'l Union Fire Ins. Co. of Pittsburgh v. Red Apple Group, Inc., 309 A.D.2d at 657, 767 N.Y.S.2d at 69 (citing Chase Manhattan Bank v. 264 Water St. Assocs.,

40

222 A.D.2d 229, 231, 634 N.Y.S.2d 687; <u>Feuer v. Menkes Feuer Inc.</u>, 8 A.D.2d 294, 299, 187 N.Y.S.2d 116). Only when there has been no notice given of the settlement, is "indemnification. . .conditioned upon the indemnitee's demonstration that it would have been liable to the claimant, that there was no good defense, and that the settlement was in a reasonable amount." <u>Id</u>.

Accordingly, since Atkinson and Patterson had notice, they are now bound to indemnify Ryder for all damages and defense costs under the principle of common law indemnity.

CONCLUSION

Accordingly, this Court grants Ryder's motion for summary judgment, finding that under New York common law, Ryder is entitled to indemnification from Atkinson and Patterson. Thus, even though Pennsylvania law requires Ryder to show actual liability for a claim of contractual indemnification, a trial is unnecessary.

**SO ORDERED.**

Dated: Brooklyn, New York
May 16, 2005

Cheryl L. Pollak
United States Magistrate Judge